IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DE NORA WATER TECHNOLOGIES TEXAS, LLC, § § § Plaintiff, § § v. § § H2O, LLC, § § Defendant. § | § § § § § § § § § | CIVIL ACTION NO. H-17-2530 |

# MEMORANDUM AND ORDER ON CLAIM CONSTRUCTION

This patent case is before the Court for construction of the disputed claim terms in United States Patent No. 6,379,525 ("the '525 Patent"), entitled "Enhanced Electrolyzer" (the "Patent-in-Suit"). Plaintiff DeNora Water Technologies Texas, LLC ("DeNora") is the current owner of the Patent-in-Suit. DeNora alleges that Defendant H2O, LLC ("H2O") is infringing the '525 Patent.

The Court conducted a hearing pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) ("*Markman* hearing"), on January 10, 2019. At the time of the *Markman* hearing, the parties had agreed on the proper construction of all but three related claim terms involving an opening within the periphery of either the housing or the middle casing. Based on the evidence before the Court, the arguments presented by counsel, and the governing legal authorities, the Court issues this

Memorandum and Order construing those disputed claim terms that require construction.

## I. BACKGROUND

Electrolysis uses direct electrical current to cause a chemical reaction, and an electrolyzer is a device in which electrolysis is performed. *See* Technology Tutorial [Doc. # 54], p. 4. The '525 Patent covers "bookcell electrolyzers" such as those used in marine sanitation systems. *See id.* at 5. In marine sanitation systems, a wastewater and seawater mixture is pumped into the bookcell electrolyzer, where it flows between a series of electrodes. *See id.* The application of electric current to the mixture causes the sodium chloride in the seawater to decompose into sodium hypochlorite, which is essentially bleach. *See id.* The hypochlorite disinfects the wastewater so it can be safely discharged into the ocean. *See id.*

DeNora and H2O both manufacture and sell marine sanitation systems utilizing bookcell electrolyzers. *See id.* at 7. DeNora alleges that H2O's system infringes the '525 Patent.

Prior to the *Markman* hearing, DeNora filed its Claim Construction Brief [Doc. # 43], H2O filed its Responsive Claim Construction Brief [Doc. # 44], and DeNora filed a Reply Brief on Claim Construction [Doc. # 46]. Additionally, the parties filed

a joint Technology Tutorial [Doc. # 54] and a final Joint Claim Construction Chart [Doc. # 60]. The Court now issues its claim construction ruling.

## II. GENERAL LEGAL STANDARDS FOR CLAIM CONSTRUCTION

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Aventis Pharm., Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*)). The patent claims in issue must be construed as a matter of law to determine their scope and meaning. *See, e.g., Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996), *aff'g*, 52 F.3d 967, 976 (Fed. Cir.) (*en banc*); *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1317 (Fed. Cir. 2007).

"There is a heavy presumption that claim terms are to be given their ordinary and customary meaning." *Aventis*, 715 F.3d at 1373 (citing *Phillips*, 415 F.3d at 1312-13; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Therefore, Courts must "look to the words of the claims themselves . . . to define the scope of the patented invention." *Id.* (citations omitted); *see also Summit 6, LLC v. Samsung Elec. Co., Ltd.*, 802 F.3d 1283, 1290 (Fed. Cir. 2015). The "ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the

effective filing date of the patent application." *Phillips*, 415 F.3d at 1313; *see also ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1374 (Fed. Cir. 2009). This "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313; *ICU*, 558 F.3d at 1374.

Intrinsic evidence is the primary resource for claim construction. *See Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1348 (Fed. Cir. 2010) (citing *Phillips,* 415 F.3d at 1312). For certain claim terms, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. For other claim terms, however, the meaning of the claim language may be less apparent. To construe those terms, the Court considers "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean . . . [including] the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.*

The claims "provide substantial guidance as to the meaning of particular claim terms." *Id.* The Court may consider the context in which the terms are used and the differences among the claims. *See id.* "Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Id.* Because the claims "are part of a fully integrated written instrument," the Court may also consider the specification and the patent's prosecution history. *Id.* at 1315, 1317. When the claims use separate terms, "each term is presumed to have a distinct meaning." *Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 847 (Fed. Cir. 2006).

### III. CONSTRUCTION OF DISPUTED CLAIM TERMS

Claim 1 of the '525 Patent includes the claim term "at least two sections in the fluid flow passageway, which are connected by one or more openings, wherein each of said openings are within the periphery of the housing." Claim 14 contains the related claim term "at least two sections connected by an opening within the periphery of the housing." Claim 8 contains related claim terms "at least two sections in the first fluid flow passageway, which are connected by one or more openings within the periphery of the middle casing" and "at least two sections in the second fluid flow passageway, which are connected by one or more openings within the periphery of the middle casing."

The parties dispute the proper construction of these claim terms.[1] Specifically, the parties dispute whether the connection provided by the opening must be within the periphery of the housing [middle casing], or whether only the opening itself must be located within the relevant periphery. Stated differently, the parties dispute whether the opening forms the entire connection such that they are the same element.

### A. Clear Language of Claim Terms

"A claim must be read in accordance with the precepts of English grammar." *In re Hyatt*, 708 F.2d 712, 714 (Fed. Cir. 1983); *Kruse Tech. P'ship v. Volkswagen AG*, 544 F. App'x 943, 949 (Fed. Cir. 2013). The language of the disputed claim terms in the '525 Patent clearly state a limitation that only the openings are required to be within the periphery of the housing [middle casing]. Claim 1 states that the sections of the fluid flow passageway are connected by openings "wherein each of said openings are within the periphery of the housing." Similarly, Claims 8 and 14 describe sections connected by "an opening within the periphery of the housing" (Claim 14) and passageways connected by "openings within the periphery of the middle casing" (Claim 8). The clear language in the claims of the '525 Patent would

---

[1] The parties agree that the claim term "within the periphery of the housing" is properly construed to mean "within an area close to the edge of the housing" and that the claim term "opening" is construed to mean "a three-dimensional hole." *See* Joint Claim Construction Chart [Doc. # 60], p. 4.

be readily understood by a person of ordinary skill in the art to mean that the claim limitations require only that the opening(s) be within the periphery of the housing or middle casing.

### B. Specifications and Figures

H2O argues that the claim terms should not be given their ordinary and customary meaning. H2O notes that the specifications and drawings, specifically Figure 4, suggest that the openings form the entire connection between the sections of the fluid flow passageway. The specifications and drawings do not, however, demonstrate that the claims ***require*** that both the openings and the connection be within the periphery of the housing or middle casing. Indeed, H2O admits that its proposed construction would not cover the electrolyzer shown in Figure 10 of the '525 Patent.

### C. Prosecution History

H2O argues also that its proposed construction is supported by the prosecution history, specifically a remark in connection with the Patent Examiner's rejection of Claims 1, 8 and 14 as originally drafted. In the remarks, which referred to all three claims, the patent applicant stated that in its invention, "the divider extends only partially along the length of the plate, thereby leaving the opening connecting the two sections of the fluid flow passageway within the periphery." *See* Remarks, Exh. B to

Claim Construction Brief [Doc. # 43], p. 9. H2O argues that the public has a right to rely on statements made during the prosecution of the patent, citing *Schwing GmbH v. Putzmeister Aktiengesellschaft*, 305 F.3d 1318, 1324 (Fed. Cir. 2002), and *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1347 (Fed. Cir. 1998). Although H2O states that it is not relying on doctrines of prosecution disclaimer or prosecution estoppel, its arguments are akin to prosecution disclaimer principles.

"Although prosecution history can be a useful tool for interpreting claim terms, it cannot be used to limit the scope of a claim unless the applicant took a position before the PTO that would lead a competitor to believe that the applicant had disavowed coverage of the relevant subject matter." *Schwing*, 305 F.3d at 1324. The statements made during patent prosecution must have narrowed the claims "with reasonable clarity and deliberateness." *Id*. (quoting *N. Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1294 (Fed. Cir. 2000); *see also Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016) (stating that the party asserting a prosecution disclaimer argument must demonstrate that the statements were both clear and unmistakable); *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1439 (Fed. Cir. 2000) (holding that a patentee's statements during prosecution and reexamination did not constitute clear disavowal of claim scope). Indeed, if the alleged disavowal "is ambiguous, or even 'amenable to multiple reasonable interpretations,'" prosecution

history disclaimer does not apply. *See Avid*, 812 F.3d at 1045 (quoting *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1359 (Fed. Cir. 2003)).

In this case, the remark on which H2O relies was not a clear and unmistakable statement that the openings form the entire connection between the fluid flow passageways or that the connection itself must be within the periphery of the housing (or the middle casing). Instead, the remark compares prior art – where "the only opening which may exist is on the edge of the two plates" – with the claimed invention, where the "divider extends only partially along the length of the plate, thereby leaving the opening connecting the two sections . . . within the periphery." *See* Remarks [Doc. # 43-3], p. 9. The statement, in context, does not rise to the level of a clear and unmistakable disclaimer. *See, e.g., Mass. Inst. of Tech. v. Shire Pharm., Inc.*, 829 F.3d 1111, 1120 (Fed. Cir. 2016); *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1342 (Fed. Cir. 2009).

### D. Proper Construction

The Court construes the claim term in Claim 1 of the '525 Patent "at least two sections in the fluid flow passageway, which are connected by one or more openings, wherein each of said openings are within the periphery of the housing" according to its ordinary meaning. Thus, in Claim 1, the opening must be within the periphery of

the housing. This claim term allows, but does not require, that the connection be located within the periphery of the housing.

The Court construes Claim 14's claim term "at least two sections connected by an opening within the periphery of the housing" as having its ordinary meaning. As with Claim 1, the Court construes the claim term to allow, but not require, that the connection be located within the periphery of the housing.

The Court construes the claim terms in Claim 8 "at least two sections in the first fluid flow passageway, which are connected by one or more openings within the periphery of the middle casing" and "at least two sections in the second fluid flow passageway, which are connected by one or more openings within the periphery of the middle casing" to have their ordinary meaning. The Court construes these claim terms to allow, but not require, that the connection be located within the periphery of the middle casing.

## IV. **CONCLUSION**

The Court has considered the intrinsic evidence in the record, as well as the parties' oral arguments and explanations during the *Markman* hearing. Based on this consideration of the evidence and the parties' arguments, as well as the application of governing claim construction principles, the Court construes the disputed terms in the Patent-in-Suit as set forth above.

It is **SO ORDERED**.

SIGNED at Houston, Texas, this **16th** day of **January, 2019**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE